## MARSTELLER v. S. KANN SONS & CO. et al.

Court of Appeals of District of Columbia.
Submitted March 8, 1929. Decided
April 1, 1929.

Petition for Rehearing Denied April 20, 1929.

No. 4742.

Crandal Mackey, of Washington, D. C., for appellant.

Edwin C. Brandenburg and Louis M. Denit, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a judgment in the Supreme Court of the District in favor of the defendants (appellees here) upon a directed verdict at the close of plaintiff's evidence in an action for injuries alleged to have been sustained while plaintiff's hair was being cut in the so-called beauty parlor operated by defendants.

In her declaration, plaintiff alleges that she went to the beauty parlor operated by the defendants and employed and paid the defendants to cut her hair; that it was the duty of the defendants to employ competent persons and to sterilize the instruments used on plaintiff; that notwithstanding this duty, the defendants negligently and carelessly employed Emma Fallon, who was an incompetent operator, and negligently and carelessly failed to sterilize the instruments used on the plaintiff before using them, "and negligently and carelessly cut plaintiff's neck and negligently and carelessly failed and omitted to properly treat the said cut on plaintiff's neck, wherefore and by reason of all of which plaintiff was cut on the neck and contracted therefrom Bermedutis and/or Venenata," etc.

Plaintiff testified: That the operator cut her hair with scissors "and then without any warning to plaintiff, and without asking her if she wanted clippers used, the operator struck the clippers hard against the back of the plaintiff's neck causing plaintiff to flinch, and then went right on and scraped the clippers up the back of plaintiff's neck hard four or five times and said she had finished. That the operator did not put anything, even powder on the back of plaintiff's neck." Plaintiff did not discover any injury to her neck until she got home, when her mother noticed her neck, "and she, plaintiff, took a mirror and looked at the back of her neck and saw that her neck was bloody—a bloody place. That the skin was broken and all along that was blood just like a very bad pin scratch across the back of her neck 'the way the clippers were put on the neck right across, just like they stayed against the neck.'" The next day her neck began to itch, and the itching persisted. About the third day her neck first appeared to be inflamed, and four or five days after the scratch the disease was all around her neck and was beginning to go down her back, and around her neck were large and very ugly looking sores. About nine or ten days later the breaking out was on her face and on the front of her neck and down on her chest. Eight or ten days after the occurrence she went to see Dr. Hornaday. Previous to the occurrence she had never had any skin disease and had been very healthy. Dr. Hornaday treated her for probably two years.

On cross-examination plaintiff was asked if she could tell what sort of a breaking out it was, and she answered, "It was a breaking out of the disease I contracted from the cut." That she did not see the abrasion on the back of her neck before she left the beauty parlor, but she knew that Miss Fallon gave her a hard blow of the clippers—"a hard knock, she struck with the clippers suddenly without any warning. One hard blow and then ran them up the neck four or five times, scraping them hard."

Plaintiff's mother testified that upon the return of her daughter from the beauty parlor she noticed a cut on the back of her daughter's neck, and called plaintiff's attention to it. "There was dried blood on the cut."

Dr. Hornaday testified: That infection could be transmitted through clippers that

had not been properly sterilized, that when plaintiff first consulted him she had a slight scratch on the left side of her neck; and that he finally diagnosed her disease as dermatitis venenata. "That assuming that the condition he found had been caused by infected clippers the eruption would begin to manifest itself through the skin from anywhere within a few hours to a couple of weeks but is most apt to be within a few days."

A barber of ten years' experience in the use of electric clippers testified that an experienced and competent barber would not cut anybody.

The court at the close of the plaintiff's case directed a verdict on the ground that there was no evidence from which the jury could find that the injury was caused by the defendant or any one in defendant's employ, or that there was any negligence on the part of the defendant, and that there was no evidence to the effect that the instrument used was not properly sterilized.

In our view the court erred in directing a verdict. There was substantial evidence from which the jury properly might have found that defendant's operator through the negligent use of clippers caused the scratch on the plaintiff's neck. There was also substantial evidence that this scratch caused the disease from which plaintiff subsequently suffered. There was direct evidence "that the operator did not put anything, even powder on the back of plaintiff's neck" after having caused the scratch or abrasion. In other words, there was evidence that the defendant's operator "negligently and carelessly cut plaintiff's neck and negligently and carelessly failed and omitted properly to treat the said cut on plaintiff's neck," as alleged in the declaration. In view of the direct testimony, the jury properly might have inferred that the clippers had not been sterilized, but apart from that, evidence of the negligent cutting and negligent failure to care for the cut made out a prima facie case.

In Sprow v. Staples, 38 App. D. C. 219, we ruled that if two distinct acts of negligence are charged in a declaration containing one count, proof by the plaintiff of only one of such acts of negligence on the part of the defendant is sufficient; and that it is error for the trial court to direct a verdict for the defendant where the plaintiff proved but one of such acts of negligence. The court said: "The injury complained of is the cause of action. It may have been the result of one of several distinct acts of negligence, or it may have been contributed to by all of them, or by more than one. That is a matter of proof. If the plaintiff can prove one act of negligence sufficient to cause an actionable injury it is enough."

Judgment is reversed, with costs, and the cause remanded for a new trial.

Reversed.